JOEL JACKSON and BRACKETT OWENS v. GEORGE WILSON and MARGARET his Wife, late Margaret Pendergrass.

*In Chancery.*

This was a suit brought by the complainants in the late supreme court for the district of Kentucky. The case as stated in their bill is as follows, to-wit: That on the 17th day of November, 1779, the defendant, Margaret Pendergrass, obtained from the court of commissioners the following certificate, to-wit:

" Margaret Pendergrass this day claimed a right to a settlement and pre-emption to a tract of land lying on Brashear's creek, about 8 miles below the head of said creek, on the south side, by improving the same in the year 1777, and residing twelve months since

her settlement. Satisfactory proof being made to the court, they are of opinion that the said Margaret Pendergrass has a right to a settlement of 400 acres, including the said improvement and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 7th day of December, entered the certificate for settlement in the following words, to-wit:

" Margaret Pendergrass enters 400 acres in Kentucky county, by virtue of a certificate, etc., lying on Brashear's creek, a branch of Salt river, about 8 miles below the head of the said creek, on the south side thereof.

That shortly after the making the entry, in such a vague and uncertain manner, the said Margaret employed a certain Nicholas Merewether to lay out and mark off the bounds thereof, agreeable to the directions of a certain ———— Porter, who was her agent. That the said Merewether did so, of which the said Margaret afterwards approved.

That on the 21st day of April, in the year 1780, they, the said complainants, and a certain Jonathan Smith, fully expecting that the said Margaret's claim was ascertained, and her bounds certainly fixed, made the following entry, to-wit:

" Jonathan Smith, and Brackett Owens and Joel Jackson, assignees, etc., of said Smith, enter 1,334 acres of land, by virtue of a military warrant, etc., on Brashear's creek, beginning at Margaret Pendergrass' corner, on the creek, at a walnut, sugar tree, and hoop-wood; then on Holeman's line to his lower corner; then on the said Holeman's line east to his corner, a beech and sugar tree ; thence south on a marked line to a corner, a poplar and beech ; thence on said line west to said creek; thence north to said Pendergrass' south-west corner; thence to the beginning."

That some time after making the said entry the said Margaret intermarried with the other defendant, George Wilson, who resurveyed the said claim, and in so doing paid no regard to the bounds as fixed by her, but extended the survey farther down the creek, so as to interfere with and include upward of two hundred and eighty acres of the land entered by them.

That the said alteration did not tend to make the survey more agreeable to the entry of the said lands, which was made to lie on the south side of Brashear's creek, about 8 miles from the head thereof; but the said survey was made by the said Wilson about twelve miles from the head, and on the west side of the said creek.

That the said Wilson had undertaken to survey the entry of the complainants at the time that he went to survey the said Margaret's settlement right, but that after he had made the alteration aforesaid in the said survey, and had thereby included a part of their entry, he refused to survey the same, but referred the complainant, Brackett Owens, to a certain Daniel Sullivan, a deputy surveyor for the said county, who the said Wilson said would survey the said claim for him.

That the said Sullivan, after consulting some time previously with the said Wilson, undertook to survey the said entry, and went in company with the said Brackett to survey the same.

That the said Brackett, being altogether a stranger to the situation of the lands in that part of the country, and being unable even to read his said entry, he gave the said Sullivan no other directions about making the said survey, than frequently to charge him to run it out exactly agreeably to entry.

That the said Sullivan surveyed the said entry, and informed the said Brackett that he had done it agreeably to said entry, and that the said Brackett was not informed of the contrary until after the plat and certificate of survey had been returned to the register's office, and a patent had issued thereon, when he discovered that the said Sullivan had not made the said survey agreeably to entry; but that in consequence of the instructions and suggestions of the said Wilson, and to promote his interest and that of a certain Aquilla Whitaker, he run out the same altogether contrary to entry. For it fully appears that the said Sullivan began their survey not at the lower corner of the said Margaret's survey, on the creek, as made by the said Merewether, and as called for in the said entry, but began the same at the lower corner of the survey thereof, as resurveyed and removed by the said Wilson, whereby two hundred and eighty acres, included within their entry, was wholly left out of the survey thereof, in favor of the said defendants, and their survey extended farther down upon the prior claims of others, and contrary to the said entry, which they can by no means hold by their said patent as aforesaid.

The prayer of the complainants was for a decree for the land included in their entry, and which ought to have been surveyed for them.

The defendants, in their answer, made the following statement, to-wit:

That some time after the solemnization of the said marriage,

the defendant, George, in company with the complainant, Brackett Owens, Squire Boone, John Porter, and Daniel Sullivan, repaired to Brashear's creek to run out and survey legally the settlement and pre-emption right which had been granted as aforesaid to the defendant, Margaret. That the said Squire Boone had previously surveyed a claim which he had entered, and had so extended his lines as to run into the claim of the said John Porter, contrary to the agreement which this defendant, George, understood had been entered into at the time the said Merewether had marked the land claimed by these defendants, and to prevent subsequent disputes, it was then and there expressly agreed upon, by and between the said complainant, Brackett Owens, the said Squire Boone, the said John Porter, the said Daniel Sullivan, who acted for a certain Aquilla Whitaker, and the said defendant, George, that the survey made by the said Squire Boone should remain without alteration, so far as related to their claims.

That the said John Porter should come down on the claim of these defendants, and that the corner of these defendants, which had been marked by the said Merewether, and where the complainants began their entry, should be moved in the same direction down the creek, so as to permit the said Porter to lie between the said Boone and the land of these defendants, as had been originally agreed upon, and that the complainants should begin their survey at the lower corner of the defendants' claim, and that the corner so agreed to be moved, should be made on similar trees to those which had been marked by the said Merewether. That similar trees, to-wit: a walnut, sugar tree, and hoop-wood, were found and marked by the said complainant, Brackett Owens, and the said Squire Boone. That the said defendant, George, then proceeded to survey and lay off the land claimed by these defendants, under the new agreement which had been made and fully entered into by the parties present, and that the said complainant, Brackett Owens, carried the chain for the defendants, and although the said defendant, Owens, may not be capable of reading, yet these defendants believe he is of hearing, and understanding what he does hear. The defendant, George, denied all manner of combination with the said Daniel Sullivan, and admitted that he was requested by a certain William Pope to survey the claim of the complainants, that he would have done it, but was forbid by the said Daniel Sullivan, who said that the principal surveyor had allotted to him that part of the country for a district, and that he was entitled to

all the emoluments arising therefrom. That he neither instructed, consulted with, or directed, the said Daniel Sullivan how or in what manner to survey the claim of the said complainants, neither did he direct the said Daniel Sullivan to overreach and deceive the said complainant, Owens; and if he had, he does not believe the said Sullivan would have been guilty of such an act of injustice.

He positively denied that ever the said Sullivan, after making the complainant's survey, informed him of any fraud or deceit used by him to the complainant, Owens.

The annexed connected plat, No. 27, was returned in this cause, of which the following is an explanation:

The tree represents the corner elm, on the west side of Clear creek, originally corner to Porter's settlement and pre-emption, Pendergrass', Holeman's, and a pre-emption of Benjamin Pope's, of 400 acres.

1 2 3 4, Holeman's settlement and pre-emption of 1,400 acres. 2 3 9 10 11, Owens and Jackson's claim as surveyed. 1 8 14 13, Mar-

garet Pendergrass' settlement and pre-emption as originally surveyed. 12 22 23 24, Margaret Pendergrass' settlement as patented. 24 25 26 27 ⊕ 23, 600 acres of Pendergrass' pre-emption as patented. 22 ⊕ 27 28, 400 acres of same, as surveyed and patented for Andrews. 11 45 46 47, Aquilla Whitaker's pre-emption of 1,000 acres, as patented. 8 7 71 12, 319⅛ acres of Pendergrass' settlement and pre-emption, that interferes with the entry of Smith, Owens and Jackson. 11 71 6 70, represent 492½ acres of Whitaker's pre-emption that interferes with the entry of Smith, Owens and Jackson. 70 72 73 10, 492½ acres of land laid off (out of Owens' and Jackson's patented land) for Whitaker, agreeably to the decree of the court. 5 72 73 9, 213¾ acres, the balance of Owens' and Jackson's patented land, clear of their original entry, surveyed for George Wilson and wife, under the decree. X, the poplar and beech called for in Smith, Owens and Jackson's entry, south of the south-east, corner of Holeman's settlement and pre-emption. Z, the walnut, sugar-tree, and hoop-wood, called for in Holeman's line, and in Smith, Owens and Jackson's entry, and said to be the lower corner of Pendergrass' settlement and pre-emption, as surveyed by Merewether, and beginning corner of Smith, Owens and Jackson's entry.

The following is a summary of the testimony which was produced at the trial:

Daniel Sullivan deposed, that in the fall of the year 1782 or 1783, the complainant Owens, called on him to survey his land; but on his telling him that he could not make a survey of it agreeably to entry, without interfering with the claims of others, they returned without making the survey.

That the complainant Owens, again called upon him some time afterward to make the said survey, and told him the defendant Wilson, would be there, and that they would then be able to make it. That when he got on the land the second time, he found the defendant Wilson was surveying a tract of land for himself, and that they then (that is, Wilson, Owens, and some others,) altered the corner as they told him.

That the next day Owens took him to Pendergrass' lower corner, on the creek, and told him, this is the corner we have established by agreement, and desired him to begin the survey there. That he made the survey accordingly, including Owens' and Whitaker's land, in one survey. That the day after the survey was made, Owens made choice of the east side, and they then run a line of division. That

Owens desired him to return the works, and delivered up to him the agreement between Merewether and Whitaker. That while he was making the survey, he asked Owens if he should run any farther, who told him to run it agreeably to entry and he would be satisfied.

Richard Taylor and Robert Breckenridge were the magistrates before whom Sullivan's deposition was taken. They deposed, that when the deposition was taken, Owens asked the deponent several questions, and complained much that they were not inserted in the deposition. That among the questions asked were the following: "When you surveyed this land, did you act under a power of attorney from Whitaker?" The answer was: "I did." "Did you at that time survey my land agreeably to entry?" Answer: "I did, from the beginning or corner shown to me." "Did not Whitaker after that apply for a resurvey?" Answer: "He did, and obtained one." "Did you survey Whitaker's land agreeably to entry?" Answer: "I did."

William Roberts deposed, that he was present some time in the year 1783, when Porter, Wilson, and Owens met on the land; that Porter insisted to run further down the creek than the conditional line which had been agreed upon between his claim and Pendergrass', saying that if he did not, he should not include his improvement. That Wilson said, if he did, he must run farther down upon Owens, for that he must have his distance on the creek. That he heard Owens repeatedly say that he would not agree to any alteration of the lines which had been agreed upon between his claim and Pendergrass'; that all he wanted was his land agreeably to entry, and he would have it so. That as they traveled along Holeman's line, upon which Owens' beginning corner was made, and lower down than the said corner, they came to some trees on said line, which Boone said were of the same sort as those called for as the beginning of Owens' entry, and that they would do as well, and then marked them as a corner, and that he has been informed Wilson extended his survey down to that corner. That he did not hear Owens (who was present) either consent or object to the making this corner; but Boone told Owens if he began on trees of the same sort on Holeman's line, and at Pendergrass' corner, that his survey would be agreeably to entry, as it called for no particular distance on Holeman's line, to which he did not remember that Owens made any reply. That during the whole that passed, Wilson insisted that he would run as far down

11

on Owens as Porter did on him, for that he would have his distance on the creek. That shortly after the making this survey he heard Sullivan asked, how Owens was pleased; that Sullivan answered, he was gone off very much displeased, but did not say about what, and added that the survey was a very good one. That Owens was a few minutes at camp after they returned from making the survey, but that he did not hear him say any thing about it.

Squire Boone deposed, that after they had been on the ground some time, Sullivan joined them, who was to survey the land the next day, he went to show Owens the land which had been entered for him, after showing Sullivan the corner which had been pitched upon by Boone and Wilson, for a corner of Pendergrass' land. That Wilson proceeded to survey his land accordingly, though not from the corner which had been previously fixed upon for the said land; that Aaron Collett and negro Tom carried the chain, when they first set out. That the corner first made for Pendergrass, on which Owens' land depended, was fixed by Porter, who said he then acted for Pendergrass. That he never heard Owens agree to the removal of the corner upon any other condition, than that it would secure the land from controversy.

Silas Ashby deposed, that he heard Owens tell Sullivan, to survey his land agreeably to entry and in no other manner, but that at that time, no survey was made.

John Porter deposed, that early in the year 1780, he, Pendergrass, and others, empowered Merewether to lay off, run, and mark out, the lands granted to them on Brashear's creek; that his claim, Pendergrass', and some others, were at that time surveyed, laid off, and the lines marked by Merewether; and he understood that about that time the said Merewether made an entry for Owens and others, adjoining on the lower side of Pendergrass' claim as then surveyed and laid off. That in the latter part of the year 1783, he went with a sworn surveyor, to get his lands legally surveyed in order to obtain patents; and that he met Wilson, Owens, and others on the land. That finding his improvement in Pendergrass' claim, as laid off by Merewether, he informed Wilson, that he should move his claim farther down the creek, in order to take in his improvement, to which the said Wilson agreed, and said that he would also extend his claim farther down the creek, as he could get equally as good land by so doing. That Owens objected to Wilson's removing his claim farther down the creek, or to any alteration of the survey as made by Merewether;

Jackson v. Wilson.

to which Wilson replied, that his was the oldest and best claim, and that he was first entitled to his complement. That Owens still objected, and said he wanted his land as entered, and that although he was repeatedly told by Wilson himself, and others, that there was land enough for them all, he still appeared to be dissatisfied and would not agree to the alteration in the surveys. That upon the evening of the same day, Owens came to Boone's camp, where he then was, and he understood Owens' claim had been surveyed by Sullivan; that Owens appeared to be dissatisfied, and said he was doubtful whether injustice had not been done to him, and that he did not like their moving Pendergrass' claim farther down the creek than it was laid off by Merewether, and that he told Owens he could not help himself, as settlement and pre-emption rights were better claims than his.

William Tyler deposed, that in the year 1783, he and Silas Ashby attended Sullivan to make Owens' survey, that Sullivan on reading the entry, refused to make the survey agreeably to the boundaries prescribed by the entry; upon which Owens left the place, and would not have the land surveyed contrary to the precise form and manner called for by the entry. That Sullivan appeared very willing to survey the land, but not according to the entry or the express desire of Owens.

David Standeford deposed, that in the year 1785, in a conversation with Aaron Collett (who is since dead), Collett told him, that Owens desired Sullivan to run his land agreeably to the entry. That he himself heard Sullivan say, that in order to deceive Owens when he was viewing the land, he had conducted him several times over about one hundred acres, and that he appeared satisfied, and supposed he had gone over the body of the tract.

William Pope deposed, that in the year 1783, he was empowered by Merewether to survey Owens' land, and not being able to do it himself, he empowered Wilson to do it, who left his house for that purpose, but on his return said he had been prevented from doing it by Sullivan.

Henry Ditto deposed, that in the spring of the year 1784, he was in company with Sullivan and Whitaker, at Whitaker's house, and he then heard Sullivan inform Whitaker, that in order to deceive Owens, he had conducted him frequently over a small part of his land, which was the best part of the tract, and that Owens expected he had seen the body of the land.

Robert Elliott deposed, that in the spring of 1776, he sent a

party to Clear creek, to repair the cabins he had begun the preceding winter, and Garrett Pendergrass, husband to Margaret, now married to the defendant Wilson, and himself went from the mouth of Kentucky, to Clear creek, since called Brashear's creek. That they kept down the creek as far as the place where Samuel Shannon since lived, where he had previously built a cabin. That the said Pendergrass asked him for, and he gave him the said cabin. That he did not believe the said Pendergrass had ever been on the said creek before, nor had ever made an improvement there, either by himself or agent. That they went from the mouth of Kentucky to Fort Pitt, about the 1st of June, or July, 1776, and that he had never heard from Pendergrass himself, or any other person, that he had ever made any improvement on Clear creek. That he believed Garrett Pendergrass had never been in Kentucky before, and that the place where Samuel Shannon lives, is the place where the improvement was, which he gave to said Pendergrass.

David Guynn deposed, that when in company with Sullivan, the said Sullivan told him that Owens was a fool, that he had kept him on one hundred acres of his land a whole day, and that he thought at night he had been over a fine tract of land.

At the June term, 1794, the following decree was pronounced:

By the Court.—In deciding on this case it seems necessary to inquire: had the complainants the first, just, and legal claim to the land in contest?

The claim of the complainants depends upon an entry which is sufficiently special, and which was known to the defendants when they made their survey.

The claim of the defendants is of older date, as well as superior in dignity, but the defendants have not shown that this land is included in their location with the commissioners, or their entry with the surveyor, and it seems to be confessed by them that it is not included, they only plead that they included this land in their survey by the express agreement of the complainant Owens, with, the defendant Wilson. Therefore the second question will be, was there such an agreement entered into between Owens and Wilson as will bind the complainants, and justify the manner in which the survey of the defendants has been made?

The defendant Wilson, in his answer, swears positively to the agreement which is pleaded, and that such an agreement was made, is confirmed by the testimony of Daniel Sullivan, but as far

Jackson *v.* Wilson.

as a negative can be proved, it is contradicted by a variety of other testimony, and concomitant circumstances.

Therefore if it appeared that the decision of the cause materially depended on the existence of this agreement, the fact ought yet to be tried by a jury, which would be more competent to decide on the credibility of the testimony in the case, and the strength of the circumstances attending it. But if the existence of this agreement were indubitably fixed, it would not be binding if the inducements made use of to procure it were fictitious and fraudulent.

It appears that the bounds of the defendant Pendergrass' claim had before been fixed and approved of by her, and the complainants had made their entry to adjoin those bounds; when the defendant Wilson proposed to depart from those bounds, and to extend the claim of the defendants on the entry of the complainants, Owens warmly opposed it.

Then Wilson urged that the defendants had the eldest and best claim, and that they were first entitled to get their complement, that they had a right to run on the entry of the complainants and would run on it, and that after much conversation on the subject, and Owens still persisting in his opposition to the removal proposed, Wilson declared that he would extend the claim of the defendants on the entry of the complainants, and proceeded to make a survey thereon accordingly, on which they have obtained a grant.

It not being shown that these allegations were founded in truth or that the defendants had a right thus to survey, or that there was any good consideration to induce Owens to agree that the survey should be so made, it ought to be presumed that there was no *bona fide* agreement entered into between Owens and Wilson, and Owens being an illiterate man and a stranger, that any agreement which he made was extracted by misrepresentation, and an apprehension that his withholding his consent could only involve him in a contest with a superior claim.

It has not been fully proven, that Daniel Sullivan assisted in accomplishing this deception, though strong circumstances appear to support the charge.

It is sufficient to give this court jurisdiction, that the complainants have charged and proven fraud on the defendant Wilson, neither can there be a doubt that the other defendant should be subjected to the same consequences of the unjustifiable measures

taken by her husband, to procure an advantage for her, as well as for himself.

Whereupon it is decreed and ordered, that the defendants do, on or before the 25th day of December next, convey unto the complainants by deed in fee simple with special warranty, all the lands contained in the entry made in the name of the said complainants and Jonathan Smith, for 1,334 acres of land, and which is contained in the grant or grants of the defendants, obtained on the settlement and pre-emption rights of the defendant Margaret Pendergrass, now Margaret Wilson.

It is further decreed and ordered, that the complainants do, on or before the said 25th day of December, convey unto the defendant, Margaret Pendergrass, now Margaret Wilson, by deed in fee simple with special warranty, an equal quantity of the land to that above decreed to be conveyed by the defendants to the complainants contained in the said defendants' grant, obtained on the said entry, and not included in the bounds specified by the said entry, if so much shall remain, after Aquilla Whitaker has got the quantity and the part thereof, to which he is entitled by a decree of this court, made and pronounced on the 31st day of May, 1794, to be laid off from the south or north end of the said remainder as the defendants shall choose.

It is further decreed and ordered, that Jonathan Boone, deputy surveyor of Shelby county, do go on the lands in controversy, and survey and lay off the' said entry, made in the name of the complainants and Jonathan Smith, in the following manner, to-wit:

Beginning at the walnut, sugar tree and hoop-wood, fixed by Nicholas Merewether, for the lower corner of Margaret Pendergrass' settlement and pre-emption on Brashear's creek, and described by the figure 8, in the connected plat returned in this suit by Martin Daniel; then on Holeman's line to his lower corner; then on Holeman's line east of his corner a beech and sugartree; thence south on a marked line, to a corner poplar and beech; thence on said line west, to said creek; thence north to a line made by said Merewether, for the lower line of said Pendergrass' claim, and described in the said connected plat by the line drawn from figure 8 to 14; thence with the said last mentioned line, east to the beginning: and that the said surveyor do also survey and ascertain the quantity and boundaries of the interference of the survey or surveys of the defendant Margaret's said settlement and pre-emption rights, on which a grant or grants have been obtained,

with the said entries of the complainants, and the said Jonathan's when surveyed as above directed, and make report thereof to the 6th day of the next term of this court.

And it is further decreed and ordered, that the said surveyor do survey, lay off, and ascertain by boundaries, a quantity of land equal to the quantity which the said interference shall be found to contain, of the land contained in the complainants' grant and not in the entry, agreeably to the choice which shall be made by the defendants as above specified, and make report thereof to the 6th day of the next term of this court.

And at the October term in the said year, the decree was made final. But the defendants prayed a rehearing, and filed the following certificate of errors, to-wit:

*First.* That it is alleged as a ground for the said decree, that the defendant Wilson did fraudulently induce the complainant Owens to survey the claim of the complainants contrary to entry; whereas no such charge is exhibited in the bill.

*Second.* That the only fraud charged in the said bill is against a certain Daniel Sullivan, who was not made a party to the suit, and against even whom it is declared by the decree no fraud was fully proven, but strong circumstances of it.

*Third.* That said decree alleges that the defendant George Wilson, made sundry false allegations to the complainant Owens, whereby the said Owens was induced to survey the complainants' claim in the bill mentioned, contrary to entry and to law. Whereas there is no such fraud charged in the bill against the said Wilson, and therefore there is no foundation for such a decree.

*Fourth.* That it is alleged in the said decree, that the court ought to presume, there was no *bona fide* agreement entered into between the said Owens and Wilson, although in the said decree it is declared that the said agreement was positively sworn to by the said George Wilson, and confirmed by the testimony of Daniel Sullivan, and that the proof opposed thereto was only negative.

*Fifth.* The complainants have not stated in their bill any equity whereon to found a decree against the defendants.

*Sixth.* That the fraud charged in the bill upon Daniel Sullivan, not being proved, can not affect the defendants, and were it even proved it would not be imputable to them, the said Owens' remedy if any, being against Sullivan in a court of law, and not against the defendants.

*Seventh.* That by the said decree, the court have made an ex-

change of lands between the parties, which they never consented to or contemplated, and have decreed to the defendants lands, which the complainants in their bill declare they have no right to, and which they also declare they can by no means hold under their patent.

And the cause was directed to be reheard at this term, and being reheard the following decree was pronounced:

BY THE COURT.—It seems that the errors assigned in this cause, may all be comprised and considered under three general questions:

*First.* Can positive proof of a *bona fide* agreement be destroyed by negative testimony?

*Second.* Is the fraud stated in the opinion of the court on which the decree is founded, sufficiently charged in the bill?

*Third.* Has the court decreed an improper exchange of land between the parties?

On the first question the court is of opinion, that positive proof may sometimes be destroyed by that which is negative, and if it can be in any instance whatever, that this is one of them.

This agreement is stated by the defendant Wilson, not in direct answer to any allegation in the bill, but only in a way of avoidance, and to Sullivan's deposition little credit can be given, because of the gross frauds which it was proven he practised in making this survey, and because some parts of the deposition is contradicted by other testimony more deserving of credit; but neither Wilson nor Sullivan relate the consideration on which Owens entered into this agreement.

Therefore the court are now of opinion, that the testimony which in the former opinion is stated as negative, was rather additional and positive, and puts it beyond doubt if any such agreement was made with Owens as stated in the answer, that it was obtained by the most improper means.

As to the second question, it appears to the court, that in the bill, fraud is charged on the defendant Wilson, in two respects. *First.* That when he made the resurvey, he fraudulently departed from the land which the other defendant had before elected and surveyed, and to the injury of the complainants. *Second.* That the defendant Wilson had fraudulently instigated Sullivan to make a survey for the complainants contrary to their entry.

The court was of opinion and is still of opinion, that in the first respect, the charge was clearly fixed by the proof of the assertions made by Wilson to Owens, and recited in the former opinion of the court.

As to the second part of the charge, it was not fully proven that

Wilson had instigated Sullivan, although strong circumstances appear to support the charge, but by the assertion of Wilson before alluded to, in connection with other testimony, it was clearly proven, that Wilson himself used the most unjustifiable measures to prevent the survey of the complainants from being made agreeably to entry, and whether Sullivan was or was not instrumental, in giving these measures success, it seems to the court must be an immaterial circumstance, the object of Wilson having been some how accomplished.

On the third question the court is of opinion that the decree does not express or imply that an exchange of land between the parties was intended by the court, but that the conveyances which they are directed to make were dictated by different and sufficient principles, similar to those entered on the record of yesterday in the case of *Jackson and Owens* v. *Whitaker.*

On a view of the whole errors alleged in this cause the court is of opinion that the interlocutory and final decrees made and pronounced in this cause ought to stand unaltered and confirmed, save only that it is now further decreed and ordered that the complainant shall, on or before the 1st day of October next, execute a deed unto the defendants as in the said last mentioned decree is directed; and, likewise, that the defendants shall, on or before the said 1st day of October next, execute a deed unto the complainants, as in the said last mentioned decree, is, also, directed. Costs, etc.

NOTE.—The year in which the entry of Margaret Pendergrass' settlement was made with the surveyor is omitted; it was in 1779.